```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROMEIN ROSTAMI,

               Plaintiff,

          v.

OPEN PROPS, INC., ADI SIDEMAN,
YONATAN SELA, ERAN KALMANSON,
and BEN PERPER,

               Defendants.

No. 22-CV-3326 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Romein Rostami ("Plaintiff") brought this action against Open Props, Inc., Adi Sideman, Yonatan Sela, Eran Kalmanson, and Ben Perper (collectively, "Defendants"), asserting claims for fraudulent inducement, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and alter ego liability. Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted.

## BACKGROUND[1]

    Open Props, Inc. ("Open Props"), formerly known as YouNow, Inc., operates a livestreaming video broadcasting service that was founded in April 2011. Compl. ¶ 23. Through

---

[1] The following facts are drawn from Plaintiff's complaint, Exhibits A and G attached to Defendants' motion to dismiss (which are incorporated into the complaint by reference), and documents publicly filed with the Securities and Exchange Commission. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("[W]e may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."). Exhibit A is the Simple Agreement for Future Tokens entered into between Plaintiff and Open Props, which is cited in the complaint at ¶ 63; and Exhibit G is a blog post published on August 12, 2021 by Open Props, which is cited in the complaint at ¶ 57.

this service, users can "stream their own live video content or interact with the video streams of other users in real time." *Id.* At all times relevant to this action, Adi Sideman was the Chief Executive Officer of Open Props; Yonatan Sela was the Senior Vice President of Business Development and Product Strategy; Eran Kalmanson was the Chief Technology Officer; and Ben Perper was the Director of Product and Business Intelligence. *Id.* ¶¶ 14-17.

In September 2017, Open Props announced that it was creating a new cryptocurrency called "Props Tokens," which would power a new video platform called "Rize." *Id.* ¶¶ 27, 34-38, 43. Open Props held an initial coin offering ("ICO"), which is "the cryptocurrency industry's equivalent to an initial public offering for stocks," *id.* ¶ 26, and sold Props Tokens to investors in exchange for U.S. dollars or other cryptocurrencies, *id.* ¶ 27. These transactions were governed by purchase agreements called "Simple Agreement for Future Tokens" ("SAFT"). *Id.* Each SAFT expressly stated that the Props Token "is a security." Horgan Aff., Ex. A, § 5(b).

According to Plaintiff, Defendants promoted the Props Tokens "through various media, including on its website and through blog posts, social media posts, online videos, presentations, and online discussion boards," Compl. ¶ 33, as well as so-called whitepapers that were posted on the Open Props website, *id.* ¶ 41. Through these promotions, Defendants "made numerous representations regarding their expertise [and] capabilities," as well as "the decentralized nature of the Props Network they planned to design and build." *Id.* ¶ 35. Open Props' vision was to create a "decentralized digital media ecosystem" that would use blockchain technology to "more equitably distribute value generated on digital media networks" to "users, content creators, developers and other contributors," rather than being "controlled by a few key actors." *Id.* ¶¶ 37, 42.

On January 16, 2018, Plaintiff entered into a SAFT with Open Props, purchasing the right to buy "certain units of PROPS [Tokens]" upon the launch of Rize and the Props Tokens. Horgan Aff., Ex. A; *see* Compl. ¶ 63. Per its terms, the SAFT would terminate upon the earlier of: (1) the issuance of Props Tokens to Plaintiff; (2) the return of the purchase price to Plaintiff; or (3) ninety days from the date of the SAFT if the Rize application was not launched (the "Deadline Date"), in which case Plaintiff would be entitled to the return of the purchase price. Horgan Aff., Ex. A, § 1(c). On March 4, 2018, Open Props sought to amend the SAFT by offering Plaintiff the option to either (1) reaffirm and extend the SAFT, which would extend the Deadline Date by twelve months, with a right to receive "Bonus Tokens" for such an extension; or (2) terminate the SAFT and receive a full refund of the purchase price (the "Amended SAFT"). *Id.* at 9. Plaintiff signed the Amended SAFT on April 1, 2018. *Id.* at 10. There is no allegation that Plaintiff elected to receive a refund of the purchase price at any time.

On or before March 4, 2019, Plaintiff received Props Tokens pursuant to the Amended SAFT. Compl. ¶ 64. Around the same time, in February 2019, Open Props published a whitepaper which, according to Plaintiff, "removed discussion of a decentralized platform and indicated that the Props Network would transition going forward as a permissioned blockchain." *Id.* ¶ 46. Plaintiff alleges that by this action, Open Props made itself "the only controller of the [Props] Network," and the network was "not truly decentralized as represented to Plaintiff and investors." *Id.* ¶ 51. Plaintiff further alleges that Open Props "decided to raise additional capital" through a "Regulation A" public offering with the SEC. *Id.* ¶ 54.[2] According to Plaintiff, "[b]y taking this

---

[2] Publicly filed SEC documents show that in the fall of 2018, Open Props filed a Form 1-A draft offering statement for the registration of qualified securities under Regulation A. *See* https://www.sec.gov/edgar/browse/?CIK=1725129. After a period of public correspondence between the SEC and Open Props, the SEC filed a Notice of Qualification under Regulation A on July 11, 2019. *Id.*

route, the Props token had become a security, and Defendants now had an ongoing obligation to report information to the public via the SEC." *Id.* ¶ 56.

On August 12, 2021, Open Props published a letter announcing that it was ending its issuance of Props Tokens. *Id.* ¶ 57. The letter explained:

> Props Tokens' status as qualified securities significantly limits our ability to respond to changing market conditions in a commercially feasible manner. The Reg A+ continuous offering environment in which we operate requires us to make public filings and often get prior regulatory approval for product changes. As a result, we are unable to follow anything remotely like proper product development . . . and struggle to launch new key functionalities we develop . . . . In addition, although we submitted to the regulation of Props Tokens as qualified securities, no U.S. exchange has been able to list crypto assets such as the Props Token, which has hindered holders wishing to trade them.

Horgan Aff., Ex. G., at 2. Plaintiff alleges that Defendants "foresaw this [Regulation A] SEC offering as an off ramp for its scheme," Compl. ¶ 61, and that Defendants "aggressively pursued" the qualified securities status despite the fact that it was "never imposed on them by any party or law," *id.* ¶ 57. Plaintiff further alleges that, "[b]y not making the [Props] network decentralized, Defendants made it impossible for investors and token holders to maintain the network on their own." *Id.* ¶ 60. As a result, "Props tokens could no longer be traded because a platform no longer existed," *id.*, which rendered them "completely worthless," *id.* ¶ 59.

Plaintiff initiated this action against Defendants on April 24, 2022, asserting claims for fraudulent inducement, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and alter ego liability (the "Complaint"). Defendants then filed the instant motion to dismiss for failure to state a claim under Rule 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The Court must accept as true all factual allegations and draw all reasonable inferences in Plaintiffs' favor, *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), but it need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted).

In evaluating a motion to dismiss, a "district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  A court may, however, also consider "documents attached to the complaint as an exhibit or incorporated in it by reference," as well as "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).  Additionally, "[c]onsideration of . . . documents filed with the SEC is appropriate with respect to a nondisclosure or misrepresentation claim because 'no serious question as to their authenticity can exist,' and because the court is to consider them on a Rule 12(b)(6) motion 'only to determine what the documents stated,' and 'not to prove the truth of their contents.'" *Roth*, 489 F.3d at 509 (emphases omitted) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

**DISCUSSION**

I. **Fraudulent Inducement**

To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)).

Claims of fraud must also meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Lorely Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170-71 (2d Cir. 2015). Under this heightened standard, plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). In addition, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent," which "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (internal quotation marks omitted).

Defendants argue that Plaintiff's fraudulent inducement claim should be dismissed for three reasons: (1) Plaintiff fails to identify any actionable misrepresentations; (2) to the extent there are any actionable misrepresentations, Plaintiff could not have reasonably relied on them; and (3) Plaintiff fails to plausibly allege intent. The Court agrees that, even if Plaintiff has pled actionable

6

misrepresentations made by Defendants, his allegations otherwise fall short of the heightened pleading standard applicable to fraud claims.

First, while it is true that the Complaint lists numerous representations made by Defendants during the promotional phase for the Props Tokens, *see* Compl. ¶¶ 34-45, most of these statements are either promissory in nature or constitute mere puffery, neither of which can form the basis of a fraudulent inducement claim. *See, e.g.*, *Blanton v. Educ. Affiliates, Inc.*, No. 21-1221-cv, 2022 WL 1505124, at *4 (2d Cir. May 12, 2022) (quoting *Brown v. Lockwood*, 432 N.Y.S.2d 186, 194 (App. Div. 1980)) ("[F]raud cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct.")[3]; *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 276 (S.D.N.Y. 2004) (quoting 60A William H. Danne, Jr., *N.Y. Juris.* § 34 (2d ed. 2003)) ("It is well established in New York that 'a seller's mere general commendations of the product sought to be sold, commonly known as "dealer's talk," "sales talk," or "puffery," do not amount to actionable misrepresentations.'"); *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 166 (S.D.N.Y. 2020) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007)) ("The Second Circuit has described puffery as 'an exaggeration or overstatement expressed in broad, vague, and commendatory language' or '[s]ubjective claims about products, which cannot be proven either true or false.'").

As one example, the Complaint cites a social media post titled "A Practical Path for Decentralization," in which Defendant Sela stated, "[i]n our view, the world needs a decentralized

---

[3] There is an exception to this general rule, in that "[a] promise relating to a future event may be actionable . . . when made with a preconceived and undisclosed intention of not performing it." *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 166-67 (S.D.N.Y. 2020) (internal quotation marks omitted). As discussed below, however, Plaintiff does not plausibly allege that Defendants acted with fraudulent intent when promoting the Props Tokens, so this exception is inapplicable.

7

digital media ecosystem." Compl. ¶ 38. By its nature, this statement makes a representation about Defendants' expectations and opinions, "which cannot be proven either true or false." *Time Warner Cable,* 47 F.3d at 159. The Complaint relies on similarly subjective statements made at an "ICO Summit" and in "pre-SAFT whitepapers," including that: "Props will much more equitably distribute value generated on digital media networks"; "Rize will popularize the cryptocurrency"; "The [Props] team is uniquely positioned to develop user experiences, viable economics, and platform ubiquity that consumers have come to expect"; and "The PROPS Ecosystem will benefit from YouNow's millions-strong user base and creator community, a new many-to-many video technology and a 40 person team with notable video and virtual economy expertise." Compl. ¶¶ 34-37, 42-43 (internal quotation marks omitted). None of these statements are actionable misrepresentations for a fraud claim. *See President Container Grp.*, 467 F. Supp. 3d at 166-67 (dismissing the fraudulent inducement claim where the alleged misrepresentations "are not concrete at all, but instead comprise of vague generalizations regarding future performance").

The statements in the Complaint that come closest to being actionable are those representing that "Props *is* a decentralized digital media ecosystem"—which Plaintiff alleges was a key factor in his decision to invest. Compl. ¶ 37 (emphasis added); *see also id.* ¶ 43 ("In launching the PROPS Ecosystem, the [Props] team continues to pioneer video networks via an open video platform and an ecosystem with a decentralized economy."); *id.* ("As a decentralized and transferable ERC-20 token with fixed supply, the PROPS Ecosystem is set to grow in proportion to PROPS' utilization by users."); *id.* ¶ 62 ("[A]mong others, Plaintiff relied on . . . Defendants' representation that they had created a viable product that would serve as a decentralized ecosystem of applications . . . ."). Whether or not a "digital media ecosystem" is

"decentralized" is arguably an objective, provable statement. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022) (describing objective statements, in the context of a puffery analysis, as "technically provable"). On the other hand, the word "decentralized," especially in this context, is also vague enough that it could be considered "immeasurable and subjective" and thus non-actionable. *Id.* at 63.

In any event, even assuming that statements such as those regarding decentralization are indeed actionable, Plaintiff has not plausibly alleged that he "reasonably relied" on them in signing the SAFT. "In evaluating justifiable reliance, courts consider 'the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them,' as well as 'the investor's access to information and whether that investor engaged in due diligence before investing.'" *DNV Inv. P'ship v. Field*, No. 15-cv-1255 (PAC), 2020 WL 2539029, at *8 (S.D.N.Y. May 19, 2020) (internal citations omitted) (quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 354 F. App'x 496, 498 (2d Cir. 2009)); *Abbey v. 3F Therapeutics, Inc.*, No. 06-cv-409, 2011 WL 651416, at *7 (S.D.N.Y. Feb. 22, 2011)); *see also Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006) ("Reasonable reliance entails a duty to investigate the legitimacy of an investment opportunity where [the] plaintiff was placed on guard or practically faced with the facts." (internal quotation marks omitted)).

Here, Plaintiff was privy to multiple pieces of information that communicated the inherent risks of the Props investment. At least two of the pre-SAFT whitepapers cited in the Complaint, ¶¶ 42-43, contain the following statement: "The ultimate implementation of the PROPS Ecosystem is dependent upon several factors and risks outside of the control of YouNow, including regulatory risks, contributor participation, the adoption of blockchain technology and the

continued use and adoption of the Ethereum network."[4] The whitepapers also state that "[s]ome elements of the [Props] platform . . . will remain centralized until decentralized options become feasible or desirable."[5] The SAFT itself provides, moreover, that "the Purchaser . . . is able to incur a complete loss of such investment without impairing the Purchaser's financial condition and is able to bear the economic risk of such investment for an indefinite period of time." Horgan Aff., Ex. A, § 5(b). Thus, although Defendants publicly expressed their vision for creating a "decentralized" Props network, Plaintiff—an accredited investor, *see* Compl. ¶ 61—cannot establish reasonable reliance on those statements alone. *See Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 338 (2d Cir. 2011) (finding no reasonable reliance where an "SEC-mandated statement explicitly disclosed the very liquidity risks about which appellants claim to have been misled").[6]

Finally, the Court agrees with Defendants that Plaintiff fails to plead fraudulent intent. Plaintiff alleges that "Defendants made these [allegedly false] representations with the intent of never creating a decentralized network and blockchain where the Props tokens could be used and planned to exit the venture under the guise of non-commercial viability leaving investors with worthless tokens." Compl. ¶ 31. This allegation, however, is entirely conclusory, and Plaintiff provides no factual basis for the assertion that Defendants never intended to create a functioning Props network. *See Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017) (quoting *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 453 (S.D.N.Y. 2007)) ("Although

---

[4] These public filings can be found at
https://www.sec.gov/Archives/edgar/data/1725129/000162827918000359/filename5.htm and
https://www.sec.gov/Archives/edgar/data/1725129/000162827918000359/filename4.htm.
[5] *Id.*
[6] *Ashland*'s analysis of reasonable reliance appears in its discussion of a Section 10(b) securities fraud claim, but the Second Circuit refers back to the same analysis to conclude that reasonable reliance was not established for the common-law fraud claim either. 652 F.3d at 339.

'[g]reat specificity as to scienter is not required,' plaintiffs 'have the burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.'"); *see also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (explaining that fraudulent intent cannot be based "on speculation and conclusory allegations" (internal quotation marks omitted)).

The only factual allegation that Plaintiff offers in support of fraudulent intent is the "Regulation A" public offering, which, according to the Complaint, served as "an off ramp for [Defendants'] scheme." Compl. ¶ 61. Plaintiff asserts that Defendants made the Regulation A offering to "obtain additional funds from other, non-SAFT (non-accredited) investors" and "increase their gains on the venture," while providing "a superficial, trojan horse when it was time to abandon the project." *Id.* But "[g]eneral allegations that a defendant engaged in misconduct in order to maximize his profit do not adequately allege scienter," and the Court cannot conclude, based on the mere fact that Defendants made a Regulation A offering, that they did so with a fraudulent state of mind. *Bryant v. Silverman*, 284 F. Supp. 3d 458, 470 (S.D.N.Y. 2018) (citing *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)); *see also Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004)) ("[A] pleading technique that couples a factual statement with a conclusory allegation of fraudulent intent is insufficient to support the inference that the defendants acted recklessly or with fraudulent intent." (internal quotation marks and alterations omitted)). Indeed, Defendants had always represented that Prop Tokens constituted securities, *see* Horgan Aff., Ex. A, § 5(b), so Defendants' continued efforts to comply with SEC regulations do not plausibly raise an inference that they intended to mislead investors. Plaintiff's fraudulent inducement claim is thus dismissed.

## II. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted). Because Plaintiff has not plausibly alleged any fraudulent conduct on Defendants' part, there is nothing "unjust" about Plaintiff's investment in Props Tokens. Furthermore, "there is little in equity and good conscience that weighs in favor of the return" of Plaintiff's investment simply because the inherent risks of that investment were realized. *Ashland*, 652 F.3d at 339 (dismissing unjust enrichment claim where "the facts alleged are that Ashland, a sophisticated investor, failed to apprise itself of the publicly disclosed riskiness of ARS as liquid investments"); *see also Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644, 646 (S.D.N.Y. 2011) (dismissing unjust enrichment claim that was based on "general advertising claims," "amorphous, unmeasurable promises," and mere puffery). Plaintiff's unjust enrichment claim is thus dismissed.

## III. Implied Covenant of Good Faith and Fair Dealing

"Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007). A party breaches the implied covenant when it "act[s] in a way that is inconsistent with the justified expectations of the other party," *Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 315 (S.D.N.Y. 2003), with the effect of "destroying or injuring the right of the other party to receive the fruits of the contract," *Tractebel Energy Mktg.*, 487 F.3d at 98. Here, the SAFT was fully performed once Open Props delivered the Props Tokens to Plaintiff. Plaintiff argues that Defendants nevertheless destroyed the "fruits of the contract," Compl. ¶ 87, when they "refused to generate any return on Plaintiff's investment" after his purchase of the Props

12

Tokens, *id.* ¶ 90. As discussed above, Plaintiff did not have a "justified expectation" in any sustained value of his investment, given the inherent, publicly disclosed risks of the Props Tokens venture. Plaintiff's claim for a breach of the implied covenant of good faith and fair dealing is thus dismissed.[7]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Plaintiff shall have one opportunity to amend the Complaint within thirty days, provided he has a good faith basis to do so. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 33.

Dated:   January 9, 2023
         New York, New York

_____
Ronnie Abrams
United States District Judge

---

[7] Because Plaintiff has not stated a viable claim for any legal wrong, his alter ego theory also fails. *See EED Holdings*, 387 F. Supp. 2d at 273 (quoting *Matter of Morris*, 82 N.Y.2d 135, 141 (Ct. App. 1993)) ("Under New York law, a party seeking to pierce the corporate veil must generally show that: '(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'"); *Zinaman v. USTS New York, Inc.*, 798 F. Supp. 128, 132 (S.D.N.Y. 1992) ("For a viable claim to exist on an alter ego theory, the plaintiff must spell out some evidence of fraud."). Plaintiff's alter ego claim is thus dismissed as well.