UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROMEIN ROSTAMI,

                Plaintiff,

         v.

OPEN PROPS, INC., ADI SIDEMAN,
YONATAN SELA, ERAN KALMANSON,
and BEN PERPER,

                Defendants.

No. 22-CV-3326 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

      Plaintiff Romein Rostami ("Plaintiff") brought this action against Open Props, Inc., Adi Sideman, Yonatan Sela, Eran Kalmanson, and Ben Perper (collectively, "Defendants"), asserting claims for fraudulent inducement, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and alter ego liability. The Court previously granted Defendants' motion to dismiss for failure to state a claim. Plaintiff, with the Court's leave, has since amended the complaint. Before the Court is Defendants' motion to dismiss the Amended Complaint ("Am. Compl."). For the reasons that follow, the motion is granted.

## BACKGROUND[1]

      The Court assumes the parties' familiarity with the factual background of this case, which is summarized in its prior decision on Defendants' motion to dismiss. *See Rostami v. Open Props,*

---

[1] The facts are drawn from the Amended Complaint, as well as from public SEC filings. *See Rostami v. Open Props, Inc.*, No. 22-cv-3326, 2023 WL 137748, at *1 n.1, *5 nn.4–5 (S.D.N.Y. Jan. 9, 2023).

*Inc.*, No. 22-cv-3326, 2023 WL 137748, at *1 (S.D.N.Y. Jan. 9, 2023).[2] The Court here provides a brief overview of the factual and procedural background relevant to the instant motion.

Open Props, Inc. ("Open Props"), formerly known as YouNow, Inc., operates a livestreaming video broadcasting service that was founded in April 2011. Am. Compl. ¶ 26. Through this service, users can "stream their own live video content or interact with the video streams of other users in real time." *Id.* In 2017, Open Props announced that it was creating a new cryptocurrency called "Props Tokens," which would power a new video platform called "Rize." *Id.* ¶¶ 35, 42–46, 53. In 2018, Open Props, Inc. sold Props Tokens to Plaintiff through a "Simple Agreement for Future Tokens" ("SAFT"). *See* Decl. of Horgan, Ex. A; Am. Compl. ¶¶ 4, 31, 84, 108. SAFTs were used to complete transactions made in Open Props' initial coin offering ("ICO"), which is "the cryptocurrency industry's equivalent to an initial public offering for stocks." *Id.* ¶¶ 23–24, 31. "A token . . . may entitle its holder[] to certain rights related to an underlying venture, such as rights to profits, share of assets, rights to use certain services provided by the issuer, and/or voting rights." *Id.* ¶ 24. Such tokens could also "be traded on online exchanges in exchange for virtual or fiat currencies." *Id.*

Plaintiff alleges that tokens are only as useful as the digital platform on which they operate. To that end, he claims that he relied on Defendants' statements that the Props Network would become a decentralized blockchain network and the decentralized network would be integrated with YouNow.com. *Id.* ¶ 83. A blockchain is "an electronic distributed ledger or list of entries . . . that is maintained by various participants in a network of computers." *Id.* ¶ 20. A decentralized blockchain network is open-sourced, allowing any person to build upon the network. *Id.* ¶¶ 56–57.

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

By contrast, a closed blockchain network requires permission from the operators of the network to build upon it, meaning that, "[i]n the event the individuals or organization operating [it] cease to exist and/or maintain the network, the network dies entirely," "making the network's native token worthless." *Id.* ¶ 58.

Before entering into the SAFT, Plaintiff was privy to documents which warned that the implementation of the "PROPS Ecosystem is dependent upon several factors and risks outside of the control of YouNow, including regulatory risks, contributor participation, the adoption of blockchain technology and the continued use and adoption of the Ethereum network." *See Rostami*, 2023 WL 137748, at *5. Indeed, two pre-SAFT whitepapers specifically advised that "[s]ome elements of the [Props] platform . . . will remain centralized until decentralized options become feasible or desirable." *See id.* Nonetheless, Plaintiff now alleges that he had the expertise to know that decentralization was technologically possible and within Defendants' financial parameters. Am. Compl. ¶ 90. According to Plaintiff, Sideman, Sela, Kalmanson, and Perper (the "Individual Defendants") never intended to decentralize or integrate the Props Network. *Id.* ¶ 29. Instead, he asserts that they "devised a fraudulent scheme" once they "noticed" that they could "take advantage of the cryptocurrency trend and ICO craze." *Id.* ¶ 29. In support of this assertion, Plaintiff cites a Bloomberg study finding that approximately 80% of ICOs in 2017 and 2018 were scams. *Id.* ¶ 26. Defendants' alleged scheme consisted of collecting investments while planning to "abandon the project utilizing the guise of non-commercial viability." *Id.* ¶ 34. Plaintiff further alleges that Defendants registered Open Props with the Securities and Exchange Commission so that they could blame burdensome "scrutiny" as the reason they had to exit the venture. *Id.* ¶¶ 74, 81.

Plaintiff initiated this action against Defendants on April 24, 2022, asserting claims for fraudulent inducement, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and alter ego liability. Defendants then filed a motion to dismiss that complaint (the "Initial Complaint") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court granted Defendants' motion on January 9, 2023 but allowed Plaintiff "one opportunity" to amend the complaint provided he had a good-faith basis to do so. *Rostami*, 2023 WL 137748, at *7. Plaintiff did so on February 6, 2023. Defendants now seek to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court held oral argument on March 7, 2024.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all factual allegations and draw all reasonable inferences in Plaintiff's favor, *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021), but it need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678. When evaluating a motion to dismiss, a "district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). A court, however, may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference," as well as "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Furthermore, "[c]onsideration of . . . documents filed with the SEC is appropriate with respect to a nondisclosure or misrepresentation claim because no serious question as to their authenticity can exist, and because the court is to consider them on a Rule 12(b)(6) motion only to

determine what the documents stated, and not to prove the truth of their contents." *Roth*, 489 F.3d at 509.[3]

## DISCUSSION

### I.    Fraudulent Inducement

To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). Claims of fraud must also meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170–71 (2d Cir. 2015). Under this heightened standard, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). In addition, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent," which "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or

---

[3] In deciding Defendants' motion to dismiss, the Court need not determine whether it would be proper to consider the declaration Plaintiff submitted with his Opposition to Defendants' motion because doing so would not affect the outcome of the Court's ruling. *See McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 606 n.1 (2d Cir. 2024) (declining to decide whether it "may take into account" the plaintiffs' affidavit submitted in opposition to the defendants' motion for judgment on the pleadings because "that question does not affect the outcome"); *see also Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018) ("[G]enerally, courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss."). The declaration merely provides more detail about the basis for Plaintiff's cryptocurrency expertise, which he also alleges in the Amended Complaint, and which the Court accepts as true on that basis. *See* Decl. of Rostami, ECF No. 62-1; Am. Compl. ¶ 90 ("Apart from being an investor, Plaintiff is a fellow blockchain and token creator. Thus, Plaintiff had industry knowledge that the technology to create a decentralized application was present at the time of the ICO and did not require the entire $25 million dollars to attempt to create such an application.").

(b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91.

Plaintiff alleges that Defendants mispresented that they "would develop a decentralized, blockchain based network in which the Props Token would serve as the network's native asset." Am. Compl. ¶ 83. In amending the Initial Complaint, Plaintiff includes additional statements by Defendants regarding decentralization, which he claims were misrepresentative. Some of these statements, however, are "representation[s] about Defendants' expectations and opinions," *Rostami*, 2023 WL 137748, at *4, and thus are not actionable, *see* Am. Compl. ¶¶ 44, 46. Others are "forward-looking statements," which do not constitute "material misrepresentations of a presently existing or past fact," and are thus too, not actionable. *ICD Cap., LLC v. CodeSmart Holdings, Inc.*, No. 14-cv-8355, 2020 WL 815733, at *7 (S.D.N.Y. Feb. 19, 2020). Plaintiff alleges, for example, that Kalmanson tweeted an article entitled, "PROPS by YouNow, Livepeer, and the *Road* to Decentralization." Am. Compl. ¶ 47 (emphasis added). This is not an actionable misrepresentation, as the "road" to decentralization implies that, currently, the network is not in fact decentralized. Nor are the allegations regarding Props' Twitter posts, given that these posts state: "Leaning into a decentralized *future* with @storjproject," *id.* ¶ 50(ii) (emphasis added) and ". . . Sideman is spreading the PROPS *vision* of our decentralized content ecosystem," *id.* ¶ 50(iii) (emphasis added). These are all forward-looking statements that express Defendants' future expectations for the Props Network.[4]

---

[4] Plaintiff is correct that statements about future performance are actionable if Defendants knew the statements were false at the time they were made, *see Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994), but as discussed in further detail below, his allegation that Defendants knew they ultimately would not decentralize the network is conclusory and lacks a factual basis, *see Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017) ("Although great specificity as to scienter is not required, plaintiffs have the burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.").

As the Court previously held, the statements that "come closest to being actionable" are those that implied the platform was presently decentralized, making them "arguably . . . objective, provable statement[s]." *Rostami*, 2023 WL 137748, at *4. Aside from the allegations the Court already considered in the Initial Complaint, Plaintiff includes in his Amended Complaint a subheading of a webpage pitching Open Props, which states: "decentralized ecosystem of video applications by YouNow." Am. Compl. ¶ 49. He also includes two Twitter posts that could imply the Props Network was already decentralized: "learn more about our decentralized business model" and "support a decentralized digital media ecosystem." *Id.* ¶¶ 50(i), 50(iv).[5] When pleading reasonable reliance, however, Plaintiff does not allege that he relied on statements suggesting that the Props Network was presently decentralized. *See* Am. Compl. ¶ 83; Pl.'s Opp'n at 11–12. Instead, Plaintiff alleges that he relied on Defendants' statements that they "*would develop* a decentralized, blockchain based network in which the Props Token *would* serve as the network's native asset." Am. Compl. ¶ 83 (emphases added); *see also id.* ¶¶ 87–88. Accordingly, despite including statements in the Amended Complaint that arguably imply existing decentralization and relying on such statements in his Opposition, Plaintiff's fraud claim does not appear to rest on those statements.

In his Opposition, Plaintiff also argues that Defendant made misrepresentations regarding the Props Network's integration with YouNow.com. *See* Pl.'s Opp'n at 12. The allegations concerning integration, however, consistently discuss integration in tandem with Defendant's

---

[5] Each of these newly alleged statements could also be construed as non-actionable, forward-looking statements. For example, a "business model" might refer to Defendants' future plans for Open Props, and a call to support a decentralized ecosystem does not necessarily imply that the network was already decentralized. Am. Compl. ¶¶ 50(i), 50(iv). Nor did the webpage's subheading specify whether the ecosystem was already, or merely aspired to be, decentralized. *Id.* ¶ 49. The Court need not, however, decide whether these statements are actionable, and will assume they are for the purposes of its analysis. *See Rostami*, 2023 WL 137748, at *4–5.

representations concerning decentralization. For example, Plaintiff alleges that the Props venture did not result in "the creation of a *decentralized network* integrated with YouNow.com," Am. Compl. ¶ 73 (emphasis added), and that "Defendants misrepresented that [the] *decentralized network* would operate in conjunction or integrate with YouNow.com," *id.* ¶ 95 (emphasis added). *See also id.* ¶¶ 72, 80, 83. Plaintiff's allegations regarding integration are thus largely derivative of his allegations regarding decentralization.

To the extent Plaintiff is contending that the statements regarding integration are independently actionable, he does not allege that Defendant in fact failed to integrate the Props Tokens with YouNow.com.[6] Moreover, at oral argument, Plaintiff's counsel could not point to any

---

[6] Even if the Court were to assume that the tokens were not integrated, Plaintiff fails to specify any actionable statements by Defendants where they represented, independent of the Props Network's decentralization, that the tokens would be integrated with YouNow.com. He does allege that Sela made the following statement: "[Props] token has a lot of utility in [YouNow.com]. It's deeply integrated [in YouNow.com]." Pl.'s Opp'n at 12 (citing Am. Compl. ¶ 45(ii)). However, the actual language of the statement, without modification, is: "This token's gonna [sic] have a lot of utility in the network. It's deeply integrated into how the experience will work." Props Project, *Props Overview – Includes Live Demo,* YouTube (Sept. 19, 2017), https://youtu.be/1qTRoTpBmb4, at 6:34–52; *see also* Defs.' Reply Br. at 6 & n.12. The Court may take judicial notice of the YouTube video in which Sela made this statement. *See Bauer v. Baud,* No. 22-cv-1822, 2023 WL 2307413, at *1 (S.D.N.Y. Mar. 1, 2023) (taking judicial notice of articles quoted in the plaintiff's complaint); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 324 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) ("The Court may take judicial notice of . . . matters of public record, including newspaper articles and media interviews, without converting a motion to dismiss into a motion for summary judgment."). Given that Sela's statement is a "vague generalization[] regarding future performance," it is not actionable. *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 166–67 (S.D.N.Y. 2020); *see also ICD Cap., LLC*, 2020 WL 815733, at *2, *6–7 (holding a defendant's statements that its revenue would dramatically increase over three years and that its stock would continue to do well were non-actionable, "forward-looking statements"); *Rostami*, 2023 WL 137748, at *4.

Plaintiff further alleges that "PROPS have multiple other utilities [on YouNow.com] that drive demand for the currency." Am. Compl. ¶ 53(vi). Once again, Plaintiff tries to amend the statement now to suggest that Defendants represented the Props Tokens were integrated with YouNow.com. The actual statement, however, makes no reference to YouNow.com, and is instead made in the context of a discussion concerning the Rize app. *See* YouNow, Inc., Preliminary Offering Circular (DOS/A) (Dec. 21, 2018) Ex. 15.2, available at https://www.sec.gov/Archives/edgar/data/1725129/000162827918000359/filename5.htm.

The Court has otherwise found statements similar to those Plaintiff alleges about YouNow.com to be non-actionable. *See Rostami*, 2023 WL 137748, at *4 (discussing Defendants' statement that "[t]he PROPS Ecosystem will benefit from YouNow's millions-strong user base and creator community" (quoting Initial Compl. ¶ 42(vi))); *see also* Am. Compl. ¶ 53(iv).

allegation in the Amended Complaint which asserted that the Props Tokens could not "be used on the platform" or that they were not "integrated with YouNow.com." Oral Argument Tr. at 11:25–13:2.[7]

In any event, even assuming that some of Defendants' alleged statements are actionable, Plaintiff's reliance on those statements was not reasonable. As explained in the Court's prior opinion, a number of pre-SAFT statements—incorporated by reference in the Amended Complaint, *see* Am. Compl. ¶¶ 51–52—cautioned that decentralization might not be feasible, *see Rostami*, 2023 WL 137748, at *5. Plaintiff argues that the pre-SAFT disclaimers concerned "general risks of loss" and did not "specifically disclaim the material misrepresentations of *decentralization* and *integration*." Pl.'s Opp'n at 15–16. The Court disagrees. Two pre-SAFT whitepapers specifically warned about the prospect that the network would not become decentralized. *See* YouNow, Inc., Preliminary Offering Circular (DOS/A) (Dec. 21, 2018) Ex. 15.2, ("Some elements of the platform . . . will remain centralized until decentralized options become feasible or desirable")[8]; *id.* Ex. 15.1 (same)[9]; *see also Rostami*, 2023 WL 137748, at *5 & n.4.

Plaintiff was not justified in ignoring the risks that the network would not become decentralized, especially in light of his knowledge about the field of cryptocurrency. "In evaluating justifiable reliance, courts consider the entire context of the transaction, including factors such as

---

[7] Indeed, the Court—while not relying on it for its truth—notes that an SEC filing from June 19, 2019 indicates that the Props Tokens had "functionality within the Props Live Video App, which . . . is the successor to the Rize app," at the time the tokens were delivered to SAFT holders. YouNow, Inc., Correspondence (July 1, 2019) 2, available at https://www.sec.gov/Archives/edgar/data/1725129/000162828019008462/filename1.htm.

[8] This public filing can be found at https://www.sec.gov/Archives/edgar/data/1725129/000162827918000359/filename5.htm.

[9] This public filing can be found at https://www.sec.gov/Archives/edgar/data/1725129/000162827918000359/filename4.htm.

its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them, as well as the investor's access to information and whether that investor engaged in due diligence before investing." *DNV Inv. P'ship v. Field*, No. 15-cv-1255, 2020 WL 2539029, at *8 (S.D.N.Y. May 19, 2020). Only where facts are "peculiarly within defendant's knowledge" may a plaintiff "rely" on Defendants' statements "without prosecuting an investigation, as he has no independent means of ascertaining the truth." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997). "The greater the sophistication of the investor, the more inquiry that is required" of that investor to "ferret out the reliability or truth about an investment." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234–35 (2d Cir. 2006).

Indeed, in the Amended Complaint, Plaintiff specifically alleges that "[a]part from being an investor, Plaintiff is a fellow blockchain and token creator" and "had industry knowledge that the technology to create a decentralized application was present at the time of the ICO and did not require the entire $25 million" fundraised. Am. Compl. ¶ 90; *see also* Pl.'s Opp'n at 14–15.[10] Plaintiff argues that the "hurdles" Defendants foresaw were peculiarly within their knowledge. Pl.'s Opp'n at 16. However, as explained above, the risk that Props may remain a centralized network had been expressed in public statements available to Plaintiff before he entered the SAFT. In light of Defendants' pre-SAFT warnings that decentralization may not be feasible or desirable and Plaintiff's relative sophistication, Plaintiff's reliance on statements which allegedly "represented" that the Props Network would decentralize was not reasonable. Am. Compl. ¶¶ 33,

---

[10] At the same time, Plaintiff seeks to downplay his expertise as it pertains to his duty to conduct due diligence before investing. In his Opposition and at oral argument, for example, Plaintiff cited *Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F. Supp. 474, 482 (S.D.N.Y. 1984). *See* Pl.'s Opp'n at 15; Oral Argument Tr. 19:5–15. In *Accusystems*, the court held that the plaintiff's reliance on the defendants' representations about their technology was reasonable because, although the plaintiff "had prior computer experience," he was unfamiliar with the computer systems at issue in the case. *Id.* Here, by contrast, Plaintiff pleads that he, like Defendants, "is a fellow blockchain and token creator," Am. Compl. ¶ 90, and therefore familiar with the technology underlying his investment.

10

45; *see Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 338 (2d Cir. 2011) (finding no reasonable reliance where an "SEC-mandated statement explicitly disclosed the very liquidity risks about which appellants claim to have been misled"); *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, No. 99-cv-3794, 2003 WL 22118977, at *20 (S.D.N.Y. Sept. 11, 2003) (stating that, "even if a defendant made a misrepresentation or material omission, this is not enough to eliminate the plaintiff's duty to examine current financial statements and other information about the defendant's business"). Because the Amended Complaint fails to allege that Plaintiff reasonably relied on Defendants' representations—even assuming that some of Defendants' statements are actionable—he has failed to sufficiently plead a claim for fraudulent inducement.

Plaintiff also fails to plausibly allege that Defendants acted with fraudulent intent. The Amended Complaint alleges that Defendants acted pursuant to a "fraudulent scheme" once they "noticed" that they could "take advantage of the cryptocurrency trend and ICO craze." *Id.* ¶ 29. Plaintiff asserts that the Individual Defendants agreed that Open Props would offer SAFTs "solely" for Prop Tokens—and not for the creation or operation of the platform on which the Props Tokens were to run—in order to "prevent or deflect potential future litigation" if the platform never materialized. *Id.* ¶ 31. He further alleges that the Individual Defendants planned for Open Props to "abandon the project utilizing the guise of non-commercial viability." *Id.* ¶ 34.

These allegations fail for the same reasons articulated in the Court's prior opinion: that Defendants made false representations with no intent of creating a decentralized network and planned to exit the venture due to non-commercial viability are purely conclusory accusations. *Rostami*, 2023 WL 137748, at *5. Rephrasing these allegations in the Amended Complaint, as Plaintiff has done, *see, e.g.*, Am. Compl. ¶¶ 29–35, is not enough to overcome what Rule 9(b) requires. *See Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 588 (S.D.N.Y. 2007) ("Repeated

11

conclusory allegations . . . do not satisfy Rule 9(b) pleading standards."). The Court, moreover, has already found insufficient Plaintiff's allegation that Defendants registered with the SEC so that they could later exit the venture under the guise that it was not commercially viable—which continues to underlie Plaintiff's theory of fraudulent intent. *See Rostami*, 2023 WL 137748, at *6; Am. Compl. ¶¶ 34, 81.[11]

Lastly, although Plaintiff attempts to situate the alleged scheme within the context that "80 percent of the ICOs in 2017 and 2018 were identified as scams," Am. Compl. ¶ 26, a general allegation that scams were prevalent at the time Plaintiff entered into the SAFT does not give rise to a "strong inference of fraudulent intent." *Lerner*, 459 F.3d at 290.[12] That is especially so because Plaintiff alleges that the Individual Defendants capitalized on the "cryptocurrency trend and ICO craze" "[u]pon information and belief." Am. Compl. ¶ 29. A plaintiff may plead facts "peculiarly within the possession and control of the opposing party . . . upon information and belief," "[b]ut even then, the plaintiff still bears the burden of alleging facts upon which . . . his belief is founded." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 142 (S.D.N.Y. 2019). Plaintiff has failed to do so here. Because the newly added allegations of fraudulent intent in the Amended Complaint do not amount to anything more than "speculation and conclusory

---

[11] Though absent from their Opposition, at oral argument, Plaintiff pointed to a 2017 SEC report, Oral Argument Tr. 17:15–18:19, which "advise[d] those who would use a . . . distributed ledger or blockchain-enabled means for capital raising[] to take appropriate steps to ensure compliance with the U.S. federal securities laws." Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO, Exchange Act, Exchange Act Release No. 81207 (July 25, 2017) 2, available at https://www.sec.gov/files/litigation/investreport/34-81207.pdf. To the extent Plaintiff is contending that Defendants should have known about the risks of reporting requirements before they raised money, indicating fraudulent intent, *see* Oral Argument Tr. 18:14–19, the Court is unpersuaded. "Defendants had always represented that Props Tokens constituted securities," and "[their] continued efforts to comply with SEC regulations do not plausibly raise an inference that they intended to mislead investors." *Rostami*, 2023 WL 137748, at *6.

[12] Plaintiff also undermines the similarities between Defendants' alleged scheme and the "80 percent of . . . ICOs in 2017 and 2018 . . . identified as scams" because he simultaneously alleges that Open Props "was only one of two projects at the time that chose" to seek a Regulation A offering and comply with securities regulations. Am. Compl. ¶¶ 26, 81–82.

allegations," Plaintiff has failed to plausibly allege that Defendants had the requisite fraudulent intent. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).

Accordingly, Plaintiff's claim for fraudulent inducement is dismissed.

## II.     Remaining Claims

For the same reasons discussed in the Court's prior decision, Plaintiff's unjust enrichment claim also fails. Plaintiff, "a sophisticated investor, failed to apprise [himself] of the publicly disclosed riskiness" of his investment, and thus "[t]here is little in equity and good conscience that weighs in favor" of the return of his investment. *Ashland Inc.*, 652 F.3d at 339; *see Rostami*, 2023 WL 137748, at *6. Plaintiff's claim that Defendants breached the implied covenant of good faith and fair dealing fails too, because he does not plausibly allege that Defendants "violate[d] an obligation that [fell] within the parties' reasonable expectations." *DSB Holdings, LLC v. Harvard Steel Sales, LLC*, No. 20-3576, 2021 WL 4944287, at *2 (2d Cir. Oct. 25, 2021) ("[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract."); *see Rostami*, 2023 WL 137748, at *6 (holding that "Plaintiff did not have a 'justified expectation' in any sustained value of his investment, given the inherent, publicly disclosed risks of the Props Tokens venture"). Because Plaintiff has not stated a viable claim for any legal wrong, his alter ego theory also fails. *See id.* at *6 n.7.

Accordingly, Plaintiff's claims for unjust enrichment, breach of the covenant of good faith and fair dealing, and alter ego liability are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of Court is respectfully requested to terminate the motion pending at ECF No. 57 and close this case.

SO ORDERED.

Dated:      March 26, 2024
            New York, New York

_____
Ronnie Abrams
United States District Judge